# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
No. 21-1052V

|  |  |
|---|---|
| PHILIP WISNIEWSKI,<br><br>　　　　　　　Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>　　　　　　　Respondent. | Chief Special Master Corcoran<br><br><br>Filed: October 4, 2024 |

*Leah VaSahnja Durant, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.*

*Sarah Black Rifkin, U.S. Department of Justice, Washington, DC, for Respondent.*

### DECISION AWARDING DAMAGES[1]

On March 11, 2021, Philip Wisniewski filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine he received to his left shoulder on October 12, 2020. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

Although Petitioner has been found entitled to compensation, the parties could not agree on the damages to be awarded, and therefore the matter was scheduled for a "Motions Day" proceeding. For the reasons discussed below, and after hearing argument from the parties, I find that Petitioner is entitled to compensation in the amount of $115,000.00 for his actual pain and suffering, plus $1,253.10 for unreimbursable medical expenses.

## I.   Procedural History

As stated above, on July 26, 2023, I issued a ruling on entitlement in favor of Petitioner. ECF No. 30. But the parties were unable to agree on an appropriate amount to award Mr. Wisniewski for his pain and suffering and unreimbursable expenses, and therefore agreed to brief the issue. ECF Nos. 37-38. On March 22, 2024, Petitioner filed his brief in support of damages ("Mot."), and Respondent filed a Response on May 21, 2024 ("Opp."). Petitioner filed a reply ("Reply") memorandum on June 20, 2024. ECF Nos. 40-41, 43. I heard arguments from both parties during a Motions' Day Damages hearing held on September 20, 2024.

## II.   Relevant Medical History

A complete recitation of the facts can be found in the Petition, affidavits, the parties' respective pre-hearing filings, and in Respondent's Rule 4(c) Report.

In brief summary, Mr. Wisniewski was a 66-year-old sales manager employed by a plumbing supply company at the time he received the flu vaccine in his left shoulder at Kinney Drugs on October 12, 2020. Ex. 1 at 1-2. His past medical history is unremarkable for any type of left shoulder pain or dysfunction. Ex. 2 at 7; Ex. 3 at 4.

One month later, on November 13, 2020, Mr. Wisniewski saw his primary care provider, Dr. MichaelTreisman, for a telehealth visit. Ex. 4 at 214. He reported intermittent discomfort and loss of range of motion ("ROM"), which was significant at times, in his left shoulder since receiving the flu vaccine. *Id*. Dr. Treisman suggested an orthopedic referral if Petitioner's symptoms did not significantly improve with ice, heat, and Voltaren gel. *Id.* at 216.

The week after, on November 20, 2020, Mr. Wisniewski visited the orthopedic clinic at Washington University in St. Louis, where he saw physician's assistant Joseph Scerba, P.A. Ex. 3 at 4. Petitioner described "an aching sensation" in his left shoulder, "with occasional sharp pains." *Id*. He exhibited full strength (5/5), but with a reduced ROM. *Id*. at 5-6. An x-ray revealed "moderate to advanced" arthritis in Petitioner's AC joint. *Id*. at 6. PA Scerba documented "[l]eft shoulder vaccine induced rotator cuff tendinitis/bursitis" and

suggested conservative remedies, including icing, activity modification, physical therapy ("PT"), and a course of meloxicam. *Id*. at 6-7.

Mr. Wisniewski began a course of PT on December 2, 2020, to treat both his chronic back pain and his left shoulder symptoms. Ex. 8 at 42. At his initial evaluation, Petitioner reported that he had recovered some strength in his left shoulder but was still experiencing pain at rest (4/10) and with sudden movement (8/10). *Id*. He was able to work, drive, and complete daily tasks, although he reported difficulty doing work in the yard, raking leaves, and gardening. *Id*. Four weeks of twice-weekly PT was recommended. *Id*. at 48.

Petitioner underwent an MRI on December 22, 2020, which a small partial-thickness tear of the left infraspinatus tendon and moderate AC joint arthritis. Ex. 3 at 23. On December 29, 2020, Mr. Wisniewski received an ultrasound guided corticosteroid injection to his left subacromial space. *Id*. at 12.

Mr. Wisniewski attended 10 PT sessions through December 30, 2020. Ex. 2 at 86. At his final session, Petitioner rated his shoulder pain at a 3/10 (6/10 at worst and with sudden movement) and reported that he still could not sleep on his left side due to pain. *Id*. He stated that he was "able to do more housework and light yard work," and felt confident performing his home exercises. *Id*. Petitioner had made "[s]ome progress" over the course of 10 sessions, but he elected to discontinue PT "due to the new year and not wanting to pay for therapy." *Id*. at 89.

Petitioner reported experiencing a "75% improve[ment]" in his shoulder symptoms for about one month following receipt of the steroid injection on December 29, 2020. *See* Ex. 7 at 403. However, his pain returned by late-January 2021 and Petitioner expressed frustration with his progress. *See id*. Mr. Wisniewski consulted an orthopedic surgeon, and on March 22, 2021, he underwent left shoulder arthroscopy. Ex. 3 at 16, 20. The post-operative diagnosis was "left shoulder low-grade partial-thickness rotator cuff tear, subacromial bursitis." *Id*. at 20.

At his first post-operative appointment on March 30, 2021, Mr. Wisniewski reported "doing well" and was "surprised by how much [] he [was] able to move his arm." Ex. 3 at 19. His pain was "well controlled," and he exhibited "[f]ull range of motion." *Id*.

Petitioner began a course of post-operative PT on April 1, 2021. Ex. 2 at 97. By June 10, 2021, Mr. Wisniewski reported "85-90%" improvement in his symptoms, with "minimal to no pain most of the time." Ex. at 38. He had "return[ed] to normal activities such as yard work." *Id*.

Mr. Wisniewski completed 24 post-operative PT sessions and was discharged on July 16, 2021. Ex. 8 at 189-90. He had met 90% of his PT goals, with only mild residual pain (0-3/10) and some difficulty lifting his grandchildren. *Id*. at 190. There are no records of any treatment after July 2021.

In his most recent declaration (dated March 18, 2024), Mr. Wisniewski explained that he is still unable to sleep on his left side due to pain. Ex. 16. He reported that he continues to experience limited range of motion of his left shoulder "that is approximately 20% less than my right side. In general, my left shoulder is about 20% weaker than my right side for all daily activities." *Id*. at 1. Mr. Wisniewski explained that his left shoulder still bothers him when he goes fly fishing, an activity that he loves. *Id*. He stated that he still needs to take pain medications after he plays catch with his grandsons due to the pain in his left shoulder. *Id*.

### III. The Parties' Arguments

#### a. Petitioner

In his brief, Mr. Wisniewski explained that he "suffered severely" from his vaccine injury, which necessitated surgery after all conservative treatment measures aimed at controlling his pain had failed. Mot. at 11. He states that even though the surgery was ultimately successful, the treatment still caused him considerable pain and the need for aggressive physical therapy after surgery was completed. *Id*. at 11-13. Petitioner argues that based on the facts and circumstances of his case, he is entitled to an award of $125,000.00 in past pain and suffering and $1,253.10, for his out-of-pocket expenses. *Id*. at 12.

Petitioner cited to three cases in support of his claim for past pain and suffering: (1) *Nute v. Sec'y of Health & Human Servs.*, No. 18-0140V, 2019 WL 6125008 (Fed. Cl. Spec. Mstr. Sept. 6, 2019), and (2) *Rafferty v. Sec'y of Health & Human Servs.*, No. 17-1906V, 2020 WL 3495956 (Fed. Cl. Spec. Mstr. May 21, 2020), (3) *Wirges v. Sec'y of Health & Human Servs.*, No. 19-1670, 2024 WL 1509385, *4-5 (Fed. Cl. Spec. Mstr. Mar. 5, 2024). Petitioners were awarded $125,000.00, $127,500.00, and $115,000.00, respectively, for their past pain and suffering.[3]

#### b. Respondent

Respondent has argued that Petitioner's SIRVA was "relatively mild-to-moderate" and that comparable cases confirm demonstrate Respondent's valuation of damages in

---
[3] Petitioner also cites to five other cases in his brief (without discussion) as examples of other surgery cases in the Program with similar facts that have received an award of $125,000.00 in pain and suffering.

4

the amount of $82,500.00 for past pain and suffering is "fair and in line with prior cases." Opp. at 8. Respondent has argued that Petitioner achieved good recovery after surgery, just a total of nine months after vaccination. Opp. at 4. Respondent also argued that there was an initial delay when Petitioner first sought care for his shoulder injury, and that he "consistently reported improvements through his course of treatment." Opp. at 5. By July 2021, Respondent noted that Petitioner reported a "90% improvement in his symptoms," and that he returned to normal activities such as yard work just nine months after vaccination. Opp at 6. And Respondent noted that Petitioner has not sought any additional treatment since that time. *Id*.

Respondent distinguished the three cases cited by Petitioner, contending that these "decisions involved more severe injuries or unique fact patterns that are not comparable to petitioner's case." Opp. at 6. In the present case, Petitioner reported mostly mild levels of pain, and suffered no impacts to his work, lifestyle, or ability to care for family members. Opp. at 6-8.

In support of his proposed award, Respondent cites to the *Shelton v. Sec'y of Health & Human Servs*., No. 19-0279V, 2021 WL 2550093, *8, n. 12 (Fed. Cl. Spec. Mstr. May 21, 2021), and *Hunt v. Health & Human Servs.*, No. 19-1003V, 2022 WL 2826662 (Fed. Cl. Spec. Mstr. June 16, 2022). Opp. at 8-10. These are two surgical cases in which petitioners were awarded $95,000.00 and $97,500.00 in pain and suffering, respectively. *Id*. Respondent argues that these are the more appropriate comparable cases, and that Petitioner should be awarded less – not more – than $95,000.00. Opp. at 9.

### IV.    Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include an award "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment award such expenses which (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). Petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

There is no precise formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("Awards for emotional distress are inherently subjective and cannot be determined by using a mathematical

formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

A special master may also look to prior pain and suffering awards to aid in the resolution of the appropriate amount of compensation for pain and suffering in each case. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, a special master may rely on his or her own experience adjudicating similar claims. *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims). Importantly, however, it must also be stressed that pain and suffering is not determined based on a continuum. *See Graves v. Sec'y of Health & Human Servs.*, 109 Fed. Cl. 579 (2013).

### V. Appropriate Compensation in this SIRVA Case

#### a. Awareness of Suffering

Neither party disputes that that Mr. Wisniewski had full awareness of his suffering, and I find that fact is supported by the record evidence.

#### b. Severity and Duration of Pain and Suffering

As I noted during the hearing, Mr. Wisniewski's case is a SIRVA injury that required surgical intervention. The three cases cited by Petitioner are good and reasonable comparable cases, involving surgery and similar treatment lengths. However, there are a few distinguishing factors that warrant a slightly lesser award than those awarded in *Nute*, *Rafferty,* and *Wirges*. In those prior cases, the claimants' injuries could be seen to have negatively impacted their lives in specific ways, such as making it difficult to care for young twin toddlers, to work, or obligating a schoolteacher to undergo a difficult treatment course. While each case filed in the Program is different, those unique circumstances in the cases cited by Petitioner are not present in this case.

Conversely, however, Respondent's cited cases of *Hunt* and *Shelton* are not useful comparables for this matter. It has previously been noted that both stand as "outlier

determinations, and rare instances of deviating from the above $100,000.00 'norm' for SIRVA cases involving surgery." *Laurette v. Sec'y of Health & Hum. Servs.*, No. 19-1047V, 2024 WL 1741611, at *5 (Fed. Cl. Spec. Mstr. Mar. 25, 2024); *see also, e.g.*, *Olson v. Sec'y of Health & Hum. Servs.*, No. 21-0408V, 2024 WL 1521634, at *4 (Fed. Cl. Spec. Mstr. Mar. 4, 2024) (characterizing the cases as "outliers in the context of SIRVA damages"); *Gao v. Sec'y of Health & Hum. Servs.*, No. 21-1884V, 2023 WL 6182455, at *3 (Fed. Cl. Spec. Mstr. Aug. 18, 2023) (emphasizing that *Hunt* and *Shelton* were "*sui generis* instances of a sub-six figure award in SIRVA cases featuring surgery"). "In short, the policy goals of the Vaccine Program are best served if outcomes in common cases (like SIRVA vaccine injury claims) are predictable and/or subject to some uniformity – and it has been my determination that surgery cases reasonably present a degree of suffering justifying a six-figure award. (Otherwise, adjustments are always considered and made to account for the facts of each case, and in some instances even SIRVA surgery cases result in lower pain and suffering awards)." *Richardson v. Sec'y of Health & Hum. Servs.*, No. 20-0674V, 2023 WL 6180813, at *8 (Fed. Cl. Spec. Mstr. Aug. 16, 2023).

Mr. Wisniewski's SIRVA appears to be somewhat on the mild end of the spectrum of comparable cases requiring surgery – but not so exceptional to warrant a departure below the six-figure norm (and certainly not in the range of Respondent's proposal of $82,500.00). Although Mr. Wisniewski describes the ongoing pain and weakness in his left shoulder, as well as how his injury has affected his ability to play ball with his grandsons and engage in fly fishing, he is still able to engage in these activities. In addition, while his medical history does not make any specific mention of left shoulder complaints in the three years prior to vaccination, his x-ray taken on November 20, 2020, revealed that there was already moderate-to-advanced arthritis in Petitioner's left AC joint, which likely also contributed, or would have contributed, to his ability to engage in these activities. Ex. 3 at 6. Based on all of the circumstances and evidence submitted, and in the interest of rough justice, I find that his past pain and suffering warrants an award of $115,000.00.

The parties agree on the amount to be awarded to Mr. Wisniewski for his out-of-pocket unreimburseable expenses, and I find that all his requested expenses are reasonable and directly related to his SIRVA injury, and thus, award the full amount requested of $1,253.10.

## CONCLUSION

Based on my consideration of the complete record as a whole and for the reasons discussed in my oral ruling, pursuant to Section 12(d)(3)(A), **I find that $115,000.00 represents a fair and appropriate amount of compensation for Petitioner's actual**

**pain and suffering.[4] I also find that Petitioner is entitled to $1,253.10, in actual unreimbursable expenses.**

**Accordingly, I award Petitioner a lump sum payment of $116,253.10, in the form of a check payable to Petitioner.** This amount represents compensation for all damages that would be available under Section 15(a).

The Clerk of Court is directed to enter judgment in accordance with this Decision.[5]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

---

[4] Since this amount is being awarded for actual, rather than projected, pain and suffering, no reduction to net present value is required. *See* Section 15(f)(4)(A); *Childers v. Sec'y of Health & Hum. Servs.*, No. 96-0194V, 1999 WL 159844, at *1 (Fed. Cl. Spec. Mstr. Mar. 5, 1999) (citing *Youngblood v. Sec'y of Health & Hum. Servs.*, 32 F.3d 552 (Fed. Cir. 1994)).

[5] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.